[Cite as *State v. Leannais*, 2019-Ohio-2568.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 107167 |
| v. | : | |
| STEVEN LEANNAIS, | : | |
| Defendant-Appellant. | : | |

---

**JOURNAL ENTRY AND OPINION**

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 27, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-16-612395-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kevin R. Filiatraut, Assistant Prosecuting Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Paul Kuzmins and Cullen Sweeney, Assistant Public Defenders, *for appellant.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant, Steven Leannais, appeals his convictions and claims the following five errors:

1. The government failed to present sufficient evidence to demonstrate appellant acted recklessly.

2. Each of the appellant's convictions is against the manifest weight of the evidence where the government failed to present any credible evidence that appellant acted recklessly.

3. Trial counsel was constitutionally ineffective when he failed to request a jury instruction on "accident."

4. Trial counsel was ineffective when he failed to cross-examine a government's fact witness about an agreement not to prosecute.

5. Trial counsel was ineffective when he failed to object to the government's misrepresentations of the law of recklessness and negligence.

{¶ 2} We find no merit to the appeal and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} In December 2016, Leannais shot and killed his friend, Anthony Stanford, Jr., while playing with his 9 mm Glock handgun during a dinner party in his home. As a result of the incident, Leannais was charged in a four-count indictment with involuntary manslaughter, using weapons while intoxicated, reckless homicide, and assault. All the counts included a forfeiture specification, seeking forfeiture of the 9 mm Glock handgun.

{¶ 4} At trial, the state introduced a video recording of the dinner party that Leannais broadcasted on Facebook Live on the night of the shooting. (Tr. 1054.) The first part of the video shows Stanford visiting Leannais in his West Tech Loft apartment while Leannais prepares steaks for his guests. Leannais indicates on the video that he is drinking Tito's vodka, and Stanford is seen making himself a vodka

drink.  Shortly thereafter, Stanford leaves the apartment and indicates he will return soon.

{¶ 5}  Meanwhile, Leannais takes the Facebook audience on a tour of his apartment, pointing out certain items of interest such as artwork and a particular houseplant.  He also shows the audience his Glock 9 mm pistol and notes a skull decal on the rear of the slide, which he calls "the punisher."  After the tour, two other guests arrive: John Frenden and his girlfriend, Ashley Karmie.  Leannais introduces them to the Facebook audience and continues cooking steaks for his guests.

{¶ 6}  Moments later, Frenden is seen in the video playing with a decorative sword that was hanging on the wall.  He disappears from view and reappears with Leannais's gun.  Leannais warns Frenden that the gun is loaded and takes it from him.  Leannais removes the magazine, racks it twice, and pulls the trigger to make sure the gun is not loaded.  He then hands it back to Frenden, who puts it in his mouth and says, "Last thing you hear is 'I didn't know it was loaded.'"  (Facebook video 1:05:49.)  Leannais shows the live round at the top of the magazine to the Facebook audience and says: "That would have made a bloody mess." (Facebook video 1:06:16.)  He then appears to place the magazine in his pocket, and Frenden replies: "You don't know about the secret clip."  (Facebook video 1:06:40.)

{¶ 7}  Stanford soon returns to the apartment.  For the remaining 13 minutes of video, Leannais cooks two more steaks while Karmie puts makeup on in front of a mirror next to the dining table.  Meanwhile, Frenden walks around the

apartment. He refers to a "secret case" and appears to be carrying something toward the kitchen counter but returns it to some other location. Frenden picks up the iPad that has been broadcasting the scene on Facebook Live and turns it off at approximately 8:45 p.m. (Facebook video 1:19:00.)

{¶ 8} The four friends sat down for dinner off camera. Karmie testified at trial that she does not know how the handgun made its way to the dining table. However, at some point, Leannais was "joking around" with the gun and pointed it at her. Karmie testified that even though she believed the gun was unloaded, she ducked and told Leannais not to point it at her. (Tr. 591.) Karmie saw Leannais turn toward the other guests and heard a shot. (Tr. 591-592.) Karmie looked up at Leannais and noticed that his face had "turned white." Both Leannais and Stanford exchanged looks of "utter disbelief." (Tr. 592.)

{¶ 9} Stanford ran out of the apartment followed by Leannais. (Tr. 595.) Leannais returned moments later, asked Frenden and Karmie to leave, and called 911. Officer James Zak of the Cleveland Police Department responded to the scene just as EMS were loading Stanford into an ambulance. Leannais met Officer Zak outside the apartment building and led him and two other officers to his apartment to explain what happened. Officer Zak's body camera captured the interview on film, and the body camera video was introduced as evidence at trial. (Tr. 1054.)

{¶ 10} Leannais, who had a concealed-carry ("CCW") permit, admitted to Officer Zak that he fired the shot that ultimately caused Stanford's death. He

explained: "We all had dinner, we had a couple of drinks, and we were all joking around, it was on the counter and we were all joking around with it, I shouldn't have it out." (Body camera video 2:37-2:47.) When asked how the shooting occurred, Leannais explained: "We were all sitting around, there was no magazine in the chamber, and I pointed it just joking around. As I was bringing it back down, I pulled the trigger as I was bringing it back down and got him." (Body camera video 5:40-6:02; tr. 435.)

{¶ 11} Leannais told Officer Zak that prior to the shooting, he removed the magazine from the chamber and did not know there was a live round in the gun. (Body camera 10:30-10:58.) Officer Zak referenced Leannais's CCW permit and reminded Leannais that the CCW class teaches permit holders to always treat guns as if they are loaded. (Tr. 438.) When asked how much he had to drink prior to the shooting, Leannais replied that he "had three drinks," and later admitted that he was "buzzed a little bit." (Body camera video 6:10-6:16; 20.00; tr. 439.) While examining the scene, Officer Zak observed that the firearm did not have a magazine inside the handle, but he found a magazine on the kitchen counter along with one loose live round. (Tr. 430.) Leannais informed Officer Zak that he had a total of three magazines.

{¶ 12} Kristen Koeth, a firearms examiner with the Cuyahoga County Regional Forensic Science Laboratory in the Cuyahoga County Medical Examiner's Office, testified that there are two ways to load a live round into Leannais's gun. (Tr.

833.)  First, if there is a magazine in the gun, the user could load one round into the chamber by pulling back the slide.  Second, the user could load the gun without a magazine by pulling back the slide, dropping a round into the empty chamber, and allowing the slide to move forward.  (Tr. 833.)  Koeth explained that unlike other gun models, Leannais's Glock handgun could be fired without a magazine inside. Koeth also found that the gun did not have a "hair trigger," meaning that the user would have to apply some pressure on the trigger in order to fire the gun.  (Tr. 840.) Koeth compared the hollow point bullet recovered from Stanford's body with bullets test-fired from Leannais's gun in the laboratory and concluded that the bullet in Stanford's body was fired from Leannais's gun.  (Tr. 848.)

{¶ 13} Koeth reviewed the portion of the Facebook Live video where Leannais took the gun from Frenden and rendered it safe.  She testified that removing the magazine, racking the slide, and pulling the trigger would have cleared all live rounds in the gun.  (Tr. 854.)  She explained, however, that "you always have to check and make sure that there's not one in the chamber."  Koeth further commented that gun-safety classes, such as those required for CCW permits, instruct gun owners to treat every firearm as if it is loaded and that the user should never point the gun at anything he or she does not intend to shoot.  (Tr. 851.)  Koeth also testified that the "number one rule" of gun safety is to always assume there is a bullet in the battery ready to be fired.  (Tr. 855.)

{¶ 14} Detective Gregory Cook, a homicide detective with the Cleveland Police Department, interviewed Leannais as part of the homicide investigation. The interview was recorded, and the video of the interview was entered into evidence. (Tr. 1054.) During the interview, Leannais told Detective Cook that Frenden spoke to him about using the gun as a prop for a movie. (Tr. 1000.) At trial, Detective Cook compared the portion of the Facebook Live video showing Leannais racking the slide back to clear the weapon with another part of the video in which Leannais is heard talking to Frenden about playing a prank on someone using blanks. (Facebook video 1:13:50.)

{¶ 15} The audience cannot see Leannais and Frenden in this portion of the video, but their actions are heard. Cook testified that clicking sounds heard during the conversation about using blanks were the same sounds the audience previously heard when Leannais racked the slide back after taking the gun from Frenden. (Tr. 1004.) He explained that it "[s]ounded like he racked the action back, and it sounded like it stayed back because when they — at the end, it sounded like he allowed the slide to slam forward." (Tr. 1004.) Cook testified that this could have been the time when a live round was put into the chamber of the gun without using the magazine because the sounds were consistent with that activity. (Tr. 1004-1005.) Leannais admitted in his statement to Detective Cook that he failed to check the chamber of the gun before pulling the trigger. (Tr. 1006.) Detective Cook testified that Leannais should have checked the chamber of the gun when he it

picked up an hour after handling it in a way in which someone could have dropped a round into the slide without using the magazine. (Tr. 1047.)

{¶ 16} The jury found Leannais guilty of involuntary manslaughter, reckless homicide, and assault, but not guilty of using weapons while intoxicated. The state conceded that all Leannais's convictions merged for sentencing purposes and elected to have Leannais sentenced on the reckless homicide charge. The trial court sentenced Leannais to two years on the reckless homicide charge to be served consecutive to the three years on the firearm specification, for an aggregate five-year prison term. Leannais now appeals his convictions.

## II. Law and Analysis

### A. Recklessly

{¶ 17} In the first assignment of error, Leannais argues the state failed to present sufficient evidence to prove that he acted recklessly. In the second assignment of error, Leannais argues his convictions are against the manifest weight of the evidence because the state failed to present credible evidence that he acted recklessly. We discuss these assigned errors together because they are closely related.

{¶ 18} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier

of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 19} In contrast to sufficiency, "weight of the evidence involves the inclination of the greater amount of credible evidence." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *Id.* The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 20} As previously stated, Leannais was found guilty of involuntary manslaughter, reckless homicide, and assault that merged into reckless homicide. It is undisputed that all three charges required the state to establish that Leannais

acted recklessly.[1]  Leannais argues there is no evidence that he acted recklessly because he did not know the gun was loaded when he pulled the trigger.  He contends that in order to demonstrate recklessness, the state had to prove that Leannais knew or had reason to believe the gun was loaded and that he intentionally pulled the trigger.  However, had Leannais intentionally pulled the trigger knowing the gun was loaded, he would have been charged with murder and felonious assault rather than reckless homicide.  One commits murder by purposely causing the death of another.  *See* R.C. 2903.02(A).  And a person acts purposely when it is the person's specific intention to cause a certain result.  R.C. 2901.22(A).  Felonious assault occurs when a person knowingly causes serious physical harm to another.  R.C. 2903.11(A)(1).  "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."  R.C. 2901.22(B).  Therefore, had Leannais known the gun was loaded when he pulled the trigger, he could have been charged with murder and felonious assault instead of reckless homicide.

---

[1] Leannais was charged with misdemeanor assault in Count 3 of the indictment, which alleges that he "did recklessly cause serious physical harm to Anthony Stanford." Leannais was charged with involuntary manslaughter in Count 1, which alleges that he "did cause the death of Anthony Stanford and such death was the proximate result of Steven Leannais committing or attempting to commit the misdemeanor * * * of assault."  And to commit reckless homicide, as alleged in Count 3, the state had to prove that Leannais "did recklessly cause the death of Anthony Stanford."

{¶ 21} It is undisputed that Leannais did not knowingly or purposely harm Stanford or cause his death. In contrast to a purposeful or knowing mental state, R.C. 2901.22(C) defines the culpable mental state of "recklessness" as follows:

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

R.C. 2901.01(A)(8) defines "[s]ubstantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

{¶ 22} Leannais argues there was no evidence that he created a substantial risk of harm that resulted in Stanford's death. He cites *State v. Peck*, 172 Ohio App.3d 25, 2007-Ohio-2730, 872 N.E.2d 1263 (10th Dist.), to support his argument. Peck was a tow-truck driver, who was called to pull a tractor trailer out of a median. When he arrived on the scene, he informed the driver that his tow truck was too small to carry the load and that a heavy tow truck was on its way. In setting up the heavy tow, Peck used a "snatch block" (a large pulley with an attached hook) that was not sufficiently rated to pull the weight of the tractor-trailer. As a result, the snatch block broke and catapulted into a passing car. The driver of a passing car was killed as a result of the incident, and Peck was charged with, and convicted of, reckless homicide. *Id.* at ¶ 5.

{¶ 23} In reversing Peck's reckless homicide conviction, the Tenth District Court of Appeals found that the evidence failed to prove that Peck knew the risk associated with his conduct because Peck was unaware that his equipment was not sufficient to pull a tractor-trailer. The court held that "[a] mere failure to perceive or avoid a risk, because of a lack of due care, does not constitute reckless conduct." *Id.* at ¶ 12. Rather, to be convicted of recklessness, "one must recognize the risk of the conduct and proceed with a perverse disregard for that risk." *Id.* The court further explained:

> In contrast to the actor who proceeds with knowledge of a risk, the failure of a person to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature is negligence. R.C. 2901.22(D). Recklessness requires more than ordinary negligent conduct. The difference between the terms "recklessly" and "negligently" is normally one of a kind, rather than of a degree. "Each actor creates a risk of harm. The reckless actor is *aware* of the risk and disregards it; the negligent actor is *not aware* of the risk but should have been aware of it." *Wharton's Criminal Law*, 15th Ed., Section 27, at 170 (emphasis sic); *see, also, State v. Wall* (S.D. 1992), 481 N.W.2d 259, 262.

*Id.* at ¶ 13.

{¶ 24} Applying *Peck* to the facts of this case, Leannais argues he was not aware that pulling the trigger of his 9 mm Glock handgun posed a risk of harm because he believed it was unloaded. However, Leannais and Frenden played with the gun after Leannais removed the magazine and rendered the gun safe. In the Facebook Live video, Frenden and Leannais talk about using the gun to play a prank on someone using blanks. Although the audience cannot see Frenden and Leannais in the film, the gun is heard being racked in a way that it could be loaded from the

top of the slide rather than with a magazine through the handle. (Tr. 1006.) Detective Cook testified that a live bullet could have been loaded in the gun at this point in the video because the sounds were consistent with that activity. (Tr. 1004-1005.)

{¶ 25} When Officer Zak entered the apartment after the shooting, he found the gun, a magazine containing hollow point bullets, and one loose round on the kitchen counter.[2] (Tr. 430.) Although Leannais previously had the magazine in his possession when he removed it from the gun, he either reloaded a bullet or left the gun and magazine accessible to his guests, who could have loaded it. Indeed, Leannais told Detective Cook in the recorded interview: "I don't know, I'm thinking that if [Frenden] cocked it and there was one in the chamber the whole time and I didn't check it * * *." (Leannais video statement 14:26-14:42.) Leannais also admitted to Detective Cook: "'The only thing mistaken is that I didn't check the chamber of the gun[.]'" (Tr. 1006.) Therefore, the evidence shows Leannais was aware of a strong possibility that the gun could have been reloaded after he had rendered it safe earlier that night. We, therefore, find *Peck* distinguishable from the facts of this case.

{¶ 26} The facts of this case are more like the facts presented in *State v. Gough*, 5th Dist. Licking No. 08-CA-55, 2009-Ohio-322. In *Gough*, the Fifth District found there was sufficient evidence to sustain a reckless homicide

---

[2] Police confiscated two other magazines from Leannais's bedroom that contained bullets made by other manufacturers. (Tr. 982-983.)

conviction where the defendant, who had been drinking at a party, shot the victim in the head while playing with the victim's gun. As in the instant case, the gun was initially loaded, and subsequently unloaded. After it was unloaded, the bullets were placed on an end table. *Id.* at ¶ 4. One of the guests asked to see a bullet, and the gun owner handed him a bullet. After the guest examined it, he returned it to the gun owner, who loaded it into the gun. Minutes later, Gough picked up the gun, aimed it at the gun owner's head, and pulled the trigger. The gun owner subsequently died of a gunshot wound to the head, and Gough was convicted of reckless homicide. *Id.* at ¶ 6, 11.

{¶ 27} On appeal, Gough argued there was insufficient evidence that he acted recklessly because there was no evidence that he knew the gun was loaded. The Fifth District rejected that argument and found that Gough knew the risks created by his conduct because the gun owner generally kept the gun loaded, and the gun had been loaded earlier that night. *Id.* at ¶ 23. Leannais's gun was also loaded earlier in the night. Although it was subsequently unloaded, Leannais and Frenden racked the slide in a manner in which a bullet could have been reloaded without the magazine. Because Leannais played with the gun after he unloaded it, he was aware of the possibility that it could have been reloaded. Indeed, his admissions that he should have checked the chamber evidences the fact that he was aware of the risks involved in pulling the trigger. Therefore, there was competent, credible evidence that Leannais acted recklessly when he caused Stanford's death.

{¶ 28} The first and second assignments of error are overruled.

## B. Ineffective Assistance of Counsel

{¶ 29} In the third, fourth, and fifth assignments of error, Leannais argues his trial counsel was ineffective because they (1) failed to request a jury instruction on "accident," (2) failed to cross-examine a state witness about an agreement not to prosecute, and (3) failed to object to the state's representation of the law on recklessness and negligence. We discuss these assigned errors together because they involve the same standard for assessing an ineffective assistance of counsel claim.

{¶ 30} To establish a claim for ineffective assistance of counsel, the appellant must show that his trial counsel's performance was deficient and that the deficient performance prejudiced his defense. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

### 1. Accident Instruction

{¶ 31} Leannais argues Stanford's death was the result of a tragic accident and that his trial counsel was ineffective because they failed to request a jury instruction on accident. However, "accident" is not an affirmative defense. Rather, it is "a factual defense that denies that the accused acted with the degree of

culpability or mens rea required for the offense, when that involves purposeful conduct." *In re F.D.*, 8th Dist. Cuyahoga No. 102135, 2015-Ohio-2405, ¶ 32, citing *State v. Taylor*, 5th Dist. Richland No. 2005-CA-0112, 2006-Ohio-4064, ¶ 35.

{¶ 32} As previously stated, Leannais was not charged with any offenses involving purposeful or intentional conduct. He was charged with offenses that required the state to prove that he acted recklessly. In accordance with the statutory definition of "recklessness," the court instructed the jury that

> [a] person acts recklessly when with heedless indifference to the consequences the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when with heedless indifference to the consequences the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist. Risk means a significant possibility as contrasted with a remote possibility that a certain result may occur or that certain circumstances may exist.
>
> *   *   *
>
> If you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of the offense of reckless homicide as charged in Count 3 of the indictment, your verdict must be not guilty according to your findings.

(Tr. 1092-1093.) This definition would have allowed the jury to understand that recklessness requires conduct beyond that of mere accident. Therefore, had the jury concluded that Leannais's conduct was an accident, it would have acquitted him of any charges that required proof of recklessness. *See, e.g.*, *State v. Tiber*, 7th Dist. Belmont No. 88-B-28, 1990 Ohio App. LEXIS 1865 (May 17, 1990) (Jurors provided definition of recklessness could "easily reason that defense to that charge

would be proof by the defendant of accident" since "[t]he phrases perversely disregards a heedless indifference speak of a requirement going well beyond an accident."). Therefore, inclusion of an accident instruction would not have changed the outcome of the trial, and counsel's failure to request an accident instruction does not meet the test for ineffective assistance of counsel.

## 2. Failure to Cross-Examine State's Witness

{¶ 33} Leannais further argues his trial counsel was ineffective because they failed to cross-examine Frenden regarding the state's promise not to prosecute him for allegedly tampering with evidence and tampering with records. However, had counsel questioned Frenden about a promise not to prosecute him, it would have opened the door to the state asking Frenden to review the statements he made to police prior to receiving any promises in order to prove that his testimony was consistent with his earlier statements. Reviewing Frenden's prior statements would have bolstered his trial testimony rather than discrediting it.

{¶ 34} Trial counsel made a tactical decision to avoid the risk of having Frenden's testimony bolstered and relied instead on other methods of impeachment. For example, Frenden admitted on cross-examination he was dishonest and lost his license to practice law as a result of his "dishonest and selfish motives." (Tr. 569.) Frenden also admitted that after Leannais was in custody, he lied to jail personnel and signed in as Leannais's lawyer even though he was disbarred. (Tr. 541.) Moreover, counsel got Frenden to admit that he urged Leannais to delete the Facebook Live video and that such an act could be viewed as

a tampering with evidence. Under these circumstances, we cannot say Leannais's trial counsel's performance was deficient or that their failure to ask Frenden about the state's promise not to prosecute him changed the outcome of the trial.

### 3. State's Representations of Recklessness and Negligence

{¶ 35} Finally, Leannais argues his trial counsel was ineffective for failing to object to certain statements made by the prosecutor during his closing arguments that conflated the concepts of recklessness and negligence. He contends the state advised the jury that there were only two choices in this case; either Leannais was a "reasonably careful person," i.e., not negligent, or Leannais "acted recklessly." (Appellant's brief at 38.) He further argues the state erroneously argued that the person who "locked away" the gun is the "reasonably careful person" who can claim negligence, and the person who was "pouring drinks" for his guests takes a "substantial and unjustifiable risk." (Appellant's brief, citing tr. 1154-1155.)

{¶ 36} However, these statements need to be read in context. Defense counsel requested and received an instruction on the lesser included offense of negligent homicide. Accordingly, the court instructed the jury on negligence, as follows:

> A person acts negligently when because of a substantial lapse from due care the person failed to perceive or to avoid a risk that the person's conduct may cause a certain result or be of a certain nature. A person is negligent with respect to circumstances when because of the substantial lapse from due care the person fails to perceive or to avoid a risk that such circumstance may exist. Due care is the amount of care which a reasonably careful person would use under the same or similar circumstances.

The lapse or failure to use due care must be substantial. Substantial is another word for material, which means being of real importance or great consequence. Risk means a significant possibility as contrasted with a remote possibility that a certain result may occur.

(Tr. 1097.)

{¶ 37} In light of these instructions, Leannais's trial counsel argued that Leannais was negligent rather than reckless because Leannais had a momentary lapse of due care when he handled the gun without checking to see if it was loaded. (Tr. 1145-1146.) In response, the state provided its own perspective on the difference between negligence and recklessness:

Couple ideas that are important when you consider negligent and reckless. Negligent, one of the things you have to consider is due care. And one of the elements of due care revolves around the reasonably careful person. Contrast that with one of the ideas of recklessness we have, which is the substantial and unjustifiable risk.

(Tr. 1152.) We find nothing confusing or misleading about this argument. And in making the argument that Leannais acted recklessly, the state merely emphasized the substantial risk involved in playing with a gun while drinking. In contrast to defense counsel's characterization of Leannais's conduct, the prosecutor argued that Leannais's reckless conduct began when he first introduced the gun in the Facebook Live video while he was drinking. (Tr. 1153.) The prosecutor explains:

That's when the recklessness begins. It begins there because he's drinking. He's got people coming over who are going to drink. And he's got a loaded gun just sitting around in his apartment — waiting for something to happen.

*  *  *

> How on earth can anyone say Mr. Leannais is the reasonably careful person when he's drinking alcohol and he's got John Frenden coming over with [the gun] out in the open?

(Tr. 1153-1154.) Although the state contrasted this behavior with that of a "reasonably careful person" who makes sure his gun is "locked away safely," such an argument does not preclude the jury from finding that Leannais was neither reckless nor "reasonably careful," but negligent. The state's description of a "reasonably careful person," was accurate and would not have prevented the jury from finding Leannais negligent if the facts supported such a finding. Indeed, the jury received a verdict form for negligent homicide in the event it found that Leannais acted negligently rather than recklessly or carefully. Therefore, defense counsel was not ineffective for failing to object to this argument because the argument was not erroneous and the outcome of the trial would not have been different if the argument had been stricken.

{¶ 38} Therefore, the third, fourth, and fifth assignments of error are overruled.

{¶ 39} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
EILEEN A. GALLAGHER, J., DISSENTS WITH SEPARATE OPINION

EILEEN A. GALLAGHER, J., DISSENTING:

{¶ 40} I respectfully dissent. I find merit to Leannais' first assignment of error. I would vacate Leannais' conviction for reckless homicide and the findings of guilt on the merged offenses of involuntary manslaughter and reckless assault because I do not believe that the evidence presented at trial, even when construed in the light most favorable to the state, was sufficient to prove beyond a reasonable doubt that Leannais acted recklessly.

{¶ 41} Leannais was convicted of reckless homicide in violation of R.C. 2903.041(A) and also found guilty of involuntary manslaughter in violation of R.C. 2903.04(B) and reckless assault in violation of R.C. 2903.13(B). Each of these offenses required the state to prove beyond a reasonable doubt that Leannais acted recklessly. *See* R.C. 2903.041(A) ("No person shall recklessly cause the death of another or the unlawful termination of another's pregnancy."); R.C. 2903.13(B)

("No person shall recklessly cause serious physical harm to another or to another's unborn.").[3] Recklessness is defined in R.C. 2901.22(C) as follows:

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.[4]

*See also* 1974 Committee Comment to H.B. No. 511 ("A person is said to be reckless under the section when, without caring about the consequences, he obstinately disregards a known and significant possibility that his conduct is likely to cause a certain result or be of a certain nature, or that certain circumstances are likely to

---

[3] R.C. 2903.04(B) states, in relevant part: "No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree * * *." "The culpable mental state of involuntary manslaughter is supplied by the underlying offense." *State v. Johnson*, 8th Dist. Cuyahoga No. 94813, 2011-Ohio-1919, ¶ 54, citing *State v. Wilson*, 182 Ohio App.3d 171, 2009-Ohio-1681, 912 N.E.2d 133, ¶ 36 (8th Dist.); *see also State v. Carpenter*, 3d Dist. Seneca No. 13-18-16, 2019-Ohio-58, ¶ 45; *State v. Vogt*, 4th Dist. Washington No. 17CA17, 2018-Ohio-4457, ¶ 92. Because the underlying offense for the involuntary manslaughter count was the reckless assault charge, recklessness was also required to prove involuntary manslaughter.

[4] R.C. 2901.22(C) was amended effective March 23, 2015. It previously stated:

> A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

This court has indicated that the definition of recklessness in the current version of R.C. 2901.22(C) and the former version of R.C. 2901.22(C) are "substantively [the] same." *See State v. Jones*, 2018-Ohio-498, 105 N.E.3d 702, ¶ 92-93 (8th Dist.).

exist."). A "risk" is "a significant possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(7). A "substantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).[5] "[S]omething is 'likely' when there is * * * good reason for expectation or belief." 1974 Committee Comment to H.B. No. 511. Thus, to support guilty verdicts for reckless homicide, involuntary manslaughter and reckless assault, the state needed to prove beyond a reasonable doubt that Leannais, with heedless indifference to the consequences, disregarded a "strong possibility" that his conduct would "likely" cause, i.e., that there was good reason to expect his conduct would cause, death or serious physical harm.

{¶ 42} The video recording of the Facebook Live broadcast shows Leannais taking the gun from Frenden, removing the magazine, racking it twice and pulling the trigger to make sure the gun is not loaded before handing it back to Frenden. Leannais then appears to put the magazine in his pocket. One of the state's experts, Kristen Koeth, testified that Leannais' actions would have cleared all live rounds in the gun and would have "rendered the gun safe." Detective Cook agreed that the weapon was rendered safe at that point and "wouldn't fire" without having "another bullet loaded into it." Leannais had a concealed carry permit and some familiarity with guns. Other magazines for the gun were kept in Leannais' bedroom.

---

[5] "Unjustified risk" is not defined in R.C. 2901.01.

{¶ 43} When Leannais handled the gun approximately an hour later, shooting and killing Stanford, there was no magazine in the gun. Because Leannais had properly unloaded the gun earlier that evening, the only way Leannais' conduct could be "likely to cause" serious physical harm or death or that Leannais could be said to have "disregard[ed]" a "strong possibility" that his conduct was "likely to cause" serious physical harm or death is if Leannais knew that the gun had been reloaded or knew that there was a likelihood that the gun had been reloaded at the time he handled the gun. Koeth testified that there are two ways to load a bullet into the gun at issue: (1) a loaded magazine could be inserted into the bottom of the gun and the slide could be pulled back and then allowed to go forward or (2) a person could unlock the slide, pull the slide back, drop a round into the chamber, and allow the slide to go forward.

{¶ 44} Officer Zak testified that when he entered Leannais' apartment after the incident, he observed the gun with no magazine inside the grip, a magazine and one loose live round on the kitchen counter. There was no direct evidence at trial establishing who reloaded the gun, when the gun was reloaded or that Leannais knew that the gun had been reloaded when he was "joking around with it" an hour later. Although circumstantial evidence can have the same probative value as direct evidence, I do not believe there was sufficient circumstantial evidence here to allow the jury to find beyond a reasonable doubt that Leannais knew that there was a "strong possibility" or likelihood that the gun had been reloaded when Leannais handled it an hour later.

{¶ 45} In determining that there was sufficient evidence to support the jury's finding that Leannais acted recklessly, the majority points to evidence that Leannais and Frenden "played with the gun after Leannais removed the magazine and rendered the gun safe" and that they joked about "using the gun to play a prank on someone using blanks." They also point to (1) Detective Cook's testimony that, although Leannais and Frenden could not be seen on the Facebook Live video during their conversation about "using blanks," "clicking sounds" could be heard on the video during that conversation that sounded like the racking of the slide — i.e., "like he racked the action back, and it sounded like it stayed back because * * * at the end, it sounded like he allowed the slide to slam forward" — and (2) Detective Cook's supposition that this could have been when the gun was reloaded, i.e., that these sounds could have been "consistent with perhaps loading [the gun] * * * either from the top or allowing the slide to go forwards." The majority concludes that this evidence combined with Leannais' statement to police after the incident in which Leannais acknowledges that he made a "mistake" in failing to "check the chamber of that gun" before handling it, shows that Leannais was "aware of the possibility that [the gun] could have been reloaded" and of "the risks involved in pulling the trigger" and constituted sufficient "competent, credible evidence that Leannais acted recklessly" when he caused Stanford's death. I disagree.

{¶ 46} Proof of recklessness requires more than evidence of negligence. Although there is evidence that Frenden and Leannais continued to "jok[e] around" with the gun after Leannais had unloaded it, based upon the record before us, I

believe too much is unknown about what happened to the gun after Leannais unloaded it (and how and when it was reloaded) for a reasonable jury to do anything more than speculate as to whether Leannais was aware that there was a "strong possibility" that the gun had been reloaded and that, with heedless indifference to the consequences, he disregarded a substantial and unjustifiable risk that his conduct would likely cause death or serious physical harm.

{¶ 47} "Proof beyond a reasonable doubt cannot be based on conjecture, speculation or an assessment of the likelihood of various possibilities." *State v. Hicks*, 8th Dist. Cuyahoga No. 102206, 2015-Ohio-4978, ¶ 57; *see also State v. Brown*, 8th Dist. Cuyahoga No. 98540, 2013-Ohio-1982, ¶ 31 ("It is well established that '[c]riminal convictions cannot rest upon mere speculation; the state must establish the guilt of the accused by proof beyond a reasonable doubt.'"), quoting *State v. Haynes*, 25 Ohio St.2d 264, 270, 267 N.E.2d 787 (1971); *State v. Miller*, 11th Dist. Lake No. 2002-L-162, 2004-Ohio-6342, ¶ 50 ("speculative evidence does not support a conviction beyond a reasonable doubt"). "Proof beyond a reasonable doubt is not a mere probability or even a strong probability." *Hicks* at ¶ 57. It requires a fact finder to be "firmly convinced" of the truth of a fact, i.e., "proof of such a character that an ordinary person would be willing to rely and act upon it in the most important of [his or her] own affairs." R.C. 2901.05(E); *State v. Givens*, 2d Dist. Clark No. 2005-CA-42, 2005-Ohio-6670, ¶ 11 ("Proof beyond a reasonable doubt is a very high degree of proof such that the jurors must be 'firmly convinced'

of the proof of the charge."). I do not believe such proof of recklessness was present here.

{¶ 48} There is no dispute in this case that Leannais violated the "number one rule" of gun safety — i.e., to always assume that there is a bullet in the gun ready to be fired — and exercised extremely poor judgment in "joking around" with the gun, with tragic consequences. However, I believe the evidence in this case supports a finding of criminal negligence — not recklessness — beyond a reasonable doubt. *See* R.C. 2901.22(D) ("A person acts negligently when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that the person's conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that such circumstances may exist.").

{¶ 49} I believe this case is distinguishable from *State v. Gough*, 5th Dist. Licking No. 08-CA-55, 2009-Ohio-322, upon which the majority relies, and a number of other cases in which courts have upheld convictions for reckless homicide based on an unintentional discharge of a firearm. In *Gough*, the defendant knew the gun owner "usually" kept his gun loaded and that the gun was actually loaded sometime that evening. *Id.* at ¶ 3, 21, 23. At one point, a guest removed the bullets from the gun, placing the gun on the kitchen table and the bullets on an end table. However, later on that evening, the gun owner and another guest examined the gun in the living room. *Id.* at ¶ 4-5. The defendant was in the living room, sitting next to the gun owner on a futon, while the gun owner and the guest looked at the gun.

*Id.* at ¶ 5, 22. When the guest asked to see a bullet, the gun owner retrieved one and gave it to the guest. *Id.* After he finished observing it, the guest gave the bullet back to the gun owner. *Id.* at ¶ 5, 22. The gun owner put the bullet back into the gun, then placed the gun on the coffee table in front of the futon. *Id.* Minutes later, the defendant picked up the gun, pointed the gun at the gun owner's head, cocked the gun and pulled the trigger, killing the gun owner. *Id.* at ¶ 6, 8, 22. The defendant was convicted of reckless homicide and appealed. *Id.* at ¶ 10-11. On appeal, the Fifth District affirmed his conviction, concluding that the evidence was sufficient to show that the defendant "knew the risks created by his conduct" and that "[h]is act of holding the gun to the head of [the gun owner] demonstrated a perverse disregard of a known risk that [the gun owner] would be shot and killed." *Id.* at ¶ 23. This is not that case.

{¶ 50} This is not a case in which the defendant knew the gun was loaded, had reason to believe the gun was loaded or had no reason to believe whether or not the gun was loaded at the time the offense occurred. *Compare, e.g., State v. Erby*, 2d Dist. Montgomery No. 27799, 2018-Ohio-3695, ¶ 20-24 (evidence was sufficient to prove beyond a reasonable doubt that defendant was guilty of reckless homicide where defendant, who had limited familiarity with the weapon, waved what he knew to be a loaded gun within two feet of where the victim was lying on the bed, with his finger on the trigger, while he was in a "'hyped up' state"); *State v. English*, 10th Dist. Franklin No. 13AP-88, 2014-Ohio-89, ¶ 6-9, 11-13, 15 (defendant who did not have any experience with firearms perversely disregarded a known risk by "messing

with" the hammer of a shotgun when he did know whether gun was loaded); *see also State v. Swanson*, 10th Dist. Franklin No. 10AP-502, 2011-Ohio-776, ¶ 12-16 (conviction for reckless homicide was not against the manifest weight of the evidence where defendant who was unfamiliar with guns, picked up a gun in anger, pointed it in the direction of her husband's head, and pulled the trigger without knowing whether the gun was loaded). In this case, because he had unloaded the gun himself earlier that evening, Leannais had reason to believe the gun was unloaded at the time he pulled the trigger.

{¶ 51} In my view, this is not a case of a defendant who was aware of a substantial and unjustified risk and, with heedless indifference, disregarded it; this is a case of a defendant who, due to a substantial lapse in judgment, failed to perceive a significant risk — i.e., that a gun he had reason to believe was unloaded might actually be loaded — and take the appropriate steps to avoid that risk. In other words, a case of criminal negligence not recklessness. *See State v. Johnson,* 8th Dist. Cuyahoga No. 105841, 2018-Ohio-1519, ¶ 11 ("While the reckless person and the negligent person both create a risk of harm, their conduct is nonetheless distinguishable: "'[t]he reckless actor is aware of the risk and disregards it; the negligent actor is not aware of the risk but should have been aware of it.'""), quoting *State v. Peck*, 172 Ohio App.3d 25, 2007-Ohio-2730, 872 N.E.2d 1263, ¶ 13 (10th Dist.)*,* quoting Torcia, *Wharton's Criminal Law,* Section 27, 170 (15th Ed.1994).

{¶ 52} Because I believe the state failed to present sufficient evidence to prove, beyond a reasonable doubt, that Leannais acted recklessly, I would reverse

his conviction for reckless homicide and the guilty verdicts on the involuntary manslaughter and reckless assault counts.