[Cite as *State v. Jones*, 2025-Ohio-4902.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

MICHAEL P. JONES,

    DEFENDANT-APPELLANT.

CASE NO. 1-25-07

OPINION AND
JUDGMENT ENTRY

Appeal from Lima Municipal Court
Trial Court No. 24CRB01308

Judgment Affirmed

Date of Decision:  October 27, 2025

APPEARANCES:

    *Chima R. Ekeh* for Appellant

    *Matthew A. Pheneger* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Michael P. Jones ("Jones") appeals the judgment of the Lima Municipal Court, alleging that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. For the reasons set forth below, the judgment of the trial court is affirmed.

*Statement of Facts*

{¶2} On May 10, 2024, Stanley D. Gaberdiel Jr. ("Gaberdiel") was driving west on Allentown Road and was preparing to turn left into the Kewpee parking lot. As he turned, he crossed into the other side of the road and entered the lane in which Jones was driving in the opposite direction. Instead of going around him, Gaberdiel alleged that Jones tried to interact with him. Jones appeared aggressive, honking, and gesturing for Gaberdiel to back up.

{¶3} Once Gaberdiel had space, he turned left into the parking lot of Kewpee, entered the restaurant, and waited in line to order food. A few minutes later, Jones entered the restaurant, approached him, and blamed him for the traffic incident. Gaberdiel testified that Jones was using profanity and stepped toward him in a confrontational manner. Jones further chest bumped him. Gaberdiel heard others complaining that there were kids present, so he suggested that he and Jones discuss this outside.

{¶4} However, Gaberdiel testified that Jones then shoved and punched him. He woke up on the ground and was not sure what had happened after he had been punched. He observed that a woman, who had been in line behind him, Sherry Neuenschwander ("Neuenschwander"), was visibly distressed and in pain following the incident. While Gaberdiel did not seek medical attention, he testified he had bruises and believed he had cracked ribs as a result of the altercation. Although some patrons contacted the police, Gaberdiel departed after finishing his meal and before the police arrived.

{¶5} Jones, on the other hand, testified that he entered the restaurant to buy food and, upon seeing Gaberdiel in line, approached him to discuss the traffic incident. According to Jones, Gaberdiel responded with profanity. Jones alleged that Gaberdiel raised his voice and shoved him first, pushing him against a glass surface and injuring his elbow. He recorded a portion of the altercation on his phone ("Exhibit A"). Jones indicated that his phone fell to the ground during the incident. As he retrieved it, an employee said he had to leave. According to Jones, he immediately exited the restaurant. He then attempted to contact the police but received no response.

{¶6} Four bystanders maintained that Jones appeared aggressive as he entered the restaurant and began confronting Gaberdiel about the traffic incident. First, Neuenschwander testified that she was waiting in line at Kewpee when Jones entered the restaurant, swung the door open and immediately screamed profanities

at Gaberdiel. Gaberdiel was directly behind her. Neuenschwander did not witness the physical altercation directly as she turned away from Jones and Gaberdiel but confirmed the men were face-to-face. She reported that the confrontation between Jones and Gaberdiel became increasingly loud, with both men yelling at each other. She heard Gaberdiel suggest taking the argument outside. She was then struck from behind by a great force, causing her to be thrown forward and hit on the right side of her head. She blacked out and did not know exactly what hit her. She suffered severe injuries and received medical treatment as a result.

{¶7} Next, Vicky Allen ("Allen") testified that she was eating in the restaurant when she observed Jones enter forcefully. She stated that Jones immediately started to verbally accost Gaberdiel and said "I'll kick you're a** right here, mother f***er." (Tr. 45). Allen was fifteen feet away from Jones and Gaberdiel. Allen saw Neuenschwander step out of the way and then witnessed Jones throw a punch at Gaberdiel. As a result, Gaberdiel fell into Neuenschwander causing her to fall and hit her head. Allen did not see Gaberdiel get physical with Jones. She described Gaberdiel as a skinny guy, who was a lot thinner and older than Jones.

{¶8} Then, Dennis Hunt ("Hunt") testified that he was at the seat directly across from where Kewpee takes orders. He saw Gaberdiel enter the restaurant, followed by Jones about five minutes later. He said Jones was visibly angry and "slammed the door open." (Tr. 57). He observed Jones and Gaberdiel get chest to

chest before Jones pushed Gaberdiel. Hunt did not see Gaberdiel push Jones. He saw physical contact from Jones, which seemed more like a push than a punch. As a result, Gaberdiel fell onto Neuenschwander and knocked her into a booth. Hunt then left before the police came and before Gaberdiel left.

{¶9} Lastly, Donald Lammers ("Lammers") testified that Jones accused Gaberdiel of cutting him off and that Gaberdiel denied it. He further stated that Jones was in Gaberdiel's face and Gaberdiel lightly shoved Jones to get him out of his face. Lammers then saw Jones hitting Gaberdiel, knocking him to the ground and causing him to hit Neuenschwander. As a result, Neuenschwander fell into a booth where Lammers's wife was sitting. After Gaberdiel was knocked down, Jones hit him four or five more times before leaving the restaurant.

*Procedural History*

{¶10} On July 29, 2024, a complaint was filed against Jones in the Lima Municipal Court, charging him with one count of assault in violation of R.C. 2903.13(B), a misdemeanor in the first degree. Jones filed a notice of self-defense on November 12, 2024, and a bench trial was held on January 21, 2025. Upon hearing the witnesses, the trial court found Jones guilty. The trial court issued its judgment of entry of sentencing on February 19, 2025.

{¶11} Jones filed his notice of appeal on March 17, 2025. On appeal, he raises the following assignments of error:

**First Assignment of Error**

**Appellant's conviction was not supported by sufficient evidence.**

**Second Assignment of Error**

**The State failed to prove beyond a reasonable doubt that Jones's use of non-deadly force was not in self-defense.**

*First Assignment of Error*

{¶12} Jones argues that his conviction for assault is not supported by sufficient evidence.

Legal Standard

{¶13} "A sufficiency-of the-evidence analysis examines whether the State has carried its burden of production at trial." *State v. Glaeser*, 2025-Ohio-2386, ¶ 37 (3d Dist.), quoting *State v. Whitt*, 2025-Ohio-424, ¶ 16 (3d Dist.). The applicable standard is whether any rational trier of fact could have found the elements of the crime to be proven beyond any reasonable doubt after viewing the evidence in the light most favorable to the prosecution. *Glaeser* at ¶ 37.

{¶14} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Goralczyk*, 2025-Ohio-1408, ¶ 11 (3d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), *superseded by constitutional amendment on other grounds*. "[A]n appellate court…

[should consider] whether the evidence, if believed, could provide a legal basis for the finder of fact to conclude that the defendant is guilty of the crime," not whether the evidence at trial should be believed." *Glaeser* at ¶ 37, quoting *State v. Daniels*, 2024-Ohio-1536, ¶ 13 (3d Dist.).

{¶15} Wherefore, "in deciding if the evidence was sufficient, this court neither resolves evidentiary conflicts nor assess the credibility of witnesses." *Goralczyk* at ¶ 11, quoting *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.). Both functions are strictly reserved to the trier of fact. *Goralczyk* at ¶ 11, quoting *Jones* at ¶ 33.

{¶16} Here, Jones was charged with one count of assault, a misdemeanor in the first degree, in violation of R.C. 2903.13(B). To obtain a conviction, the State had to prove that Jones recklessly caused physical harm to another. *Id*. Recklessness means to disregard, with heedless indifference to the consequences, a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result. R.C. 2901.22(C). Substantial risk is defined as a "strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

Legal Analysis

{¶17} On appeal, Jones raises two arguments that assert the State failed to produce sufficient evidence that he acted recklessly. First, he asserts that his conduct of verbally confronting Gaberdiel after a traffic dispute, without any intent

to fight, only raises the issue of negligence. Jones emphasizes that he declined Gaberdiel's invitation to take the matter outside, showing no desire for violence.

**{¶18}** The State responds that Jones entered the restaurant visibly angry, yelling and cursing in a crowded public space. Allen testified that Jones threatened Gaberdiel by saying, "I'll kick you're a** right here, mother f***er." This clearly shows Jones engaged Gaberdiel aggressively and without being threatened. Lammers's testimony also indicates Jones escalated the conflict by pushing and striking Gaberdiel multiple times without provocation. Recklessness under R.C. 2901.22(C) includes conscious disregard of substantial, unjustifiable risks. Since the record shows that Jones initiated violence in a place full of bystanders, this first argument is without merit.

**{¶19}** Second, Jones argues that he was not reckless because he was not aware that his conduct could injure a bystander nearby like Neuenschwander. He claims no one presented evidence that he foresaw or consciously disregarded a risk to bystanders. In support of his argument, Jones cites *State v. Mason*, 2024-Ohio-2290, ¶ 18 (2d Dist.), and *State v. Leannais*, 2019-Ohio-2568, ¶ 23 (8th Dist.). Both cases state that a "mere failure to perceive or avoid a risk" does not equal recklessness. *Mason* at ¶ 18; *Leannais* at ¶ 23.

**{¶20}** In response, the State points out that Jones resorted to physical force in a confined space with multiple bystanders in close proximity. Indeed, Neuenschwander was right next to Gaberdiel when Gaberdiel was forced into her.

He further ignored several opportunities to leave or de-escalate after being told to take it outside. Since a reasonable trier of fact could find that Jones acted recklessly, this second argument is without merit.[1]

{¶21} After reviewing all the evidence in the light most favorable to the State, we find that there was sufficient evidence to establish the recklessness element of assault. Jones failed to establish that his conviction is not supported by sufficient evidence. We thus overrule his first assignment of error.

*Second Assignment of Error*

{¶22} Jones argues that his conviction was against the manifest weight of the evidence because his use of non-deadly force was in self-defense.

Legal Standard

{¶23} To determine if a conviction is against the manifest weight of the evidence, "a reviewing court must examine the entire record, '[w]eigh the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" (Brackets sic.) *State v. Jefferson*, 2025-Ohio-429, ¶ 9 (3d Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reviewing

---

[1]Jones further argues in his first assignment of error that the State failed to show he was the initial aggressor. Since this argument addresses whether he acted in self-defense, we will analyze this issue under the second assignment of error where he more fully addresses this matter.

court must nevertheless give appropriate deference to the trier of fact on matters of witness credibility and the weight of the evidence. *Id*. Appellate intervention is warranted "only in exceptional cases, where the evidence 'weighs heavily against the conviction.'" *Id*.

{¶24} In cases where the defendant asserts self-defense, the law imposes a dual burden: the defendant carries the burden of production, while the State carries the burden of persuasion. *Id*. at ¶ 12, citing *State v. Estelle*, 2021-Ohio-2636, ¶ 18 (3d Dist.). Under R.C. 2901.05(A) and (B)(1), the defendant must first introduce evidence that "tends to support" the use of force in self-defense. *Jefferson* at ¶ 12; *Estelle* at ¶ 18. Once that burden is met, the prosecution must disprove self-defense beyond a reasonable doubt. *Jefferson* at ¶ 12, citing *State v. Flory*, 2020-Ohio-5136, ¶ 43 (3d Dist.).

{¶25} The elements required to prove self-defense vary depending on whether deadly or non-deadly force was used. *Jefferson* at ¶ 13, citing *State v. Crowe*, 2019-Ohio-3986, ¶ 15 (3d Dist.). To establish self-defense involving non-deadly force, the defendant must demonstrate: (1) that they were not at fault in creating the situation giving rise to the affray; (2) that they had a bona fide belief, even if mistaken, that they were in imminent danger of bodily harm; and (3) that the only means of protection from that danger was the use of force not likely to cause death or great bodily harm. *Jefferson* at ¶ 13.

{¶26} "[A] person cannot provoke an assault or voluntarily enter an encounter and then claim a right of self-defense." *State v. Bender*, 2024-Ohio-1750, ¶ 27 (3d Dist.), citing *State v. Woodson*, 2022-Ohio-2528, ¶ 82 (6th Dist.). This concept does not necessarily mean the person at fault must be the *immediate* aggressor. (Emphasis added.) *Bender* at ¶ 27. Thus, a person who provokes an assault or voluntarily enters an encounter might not succeed in his claim of self-defense. *Id*. Also, "a defendant is at fault in creating the situation giving rise to the affray when the defendant chooses to confront the victim or knowingly go to a place where the victim will be, even when the defendant's action was otherwise completely lawful." *Id*., citing *State v. Elam*, 2022-Ohio-1895, ¶ 15 (12th Dist.).

{¶27} To rebut a claim of self-defense, "the State must 'disprove at least one of these elements of self-defense beyond a reasonable doubt.'" *Jefferson* at ¶ 14, quoting *State v. Passmore*, 2023-Ohio-3209, ¶ 29 (3d Dist.), quoting *State v. Carney*, 2020-Ohio-2691, ¶ 31 (10th Dist.). Because these elements are cumulative, the failure to establish any single element causes the entire self-defense claim to fail. *Jefferson*, 2025-Ohio-429, at ¶ 14 (3d Dist.), citing *State v. Ridley*, 2022-Ohio-2561, ¶ 15 (1st Dist.).

## Legal Analysis

{¶28} Jones argues that he was not at fault in creating the situation that led to the affray. He insists Gaberdiel shoved him first, pushing him into a glass surface and causing an injury. Jones claims this initial shove escalated the encounter from

verbal to physical, thus justifying his subsequent actions. He relies on *State v. Mitchell*, to argue that the first physical act determines fault in a fight and introduced a cell phone video ("Exhibit A") in support of his position, claiming it shows Gaberdiel shoved him first. *Id*., 2023-Ohio-2604, ¶ 21 (1st Dist.).

{¶29} However, *Mitchell* is different from our present case since the video in *Mitchell* showed exactly who started the physical violence. *Id.* Jones's video is brief and does not capture who first resorted to physical force. The State also introduced multiple witnesses who testified that Jones aggressively entered the restaurant, shouted profanities, and chest-bumped Gaberdiel before any shove occurred. Hunt observed Jones initiating contact by stepping into Gaberdiel's personal space, while Allen heard Jones threaten Gaberdiel verbally before any physical interaction. Lammers finally indicated that Gaberdiel's contact with Jones was a "light shove" aimed only to create space. While conflicting testimony was presented at trial, "[a] trier of fact… is free to believe all, some, or none of the testimony of each witness." (Cleaned up.) *State v. Greer*, 2024-Ohio-694, ¶ 27 (3d Dist.).

{¶30} Jones came into the Kewpee to confront Gaberdiel after the prior incident on Allentown Road. Because of the testimony from multiple bystanders about Jones's aggressive behavior and initiation of physical contact, the conclusion that he was the party who created the affray is not against the manifest weight of the

evidence. We thus find Jones's argument without merit and his second assignment of error is overruled.

*Conclusion*

**{¶31}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of Lima Municipal Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and MILLER, J.J., concur.**

Case No. 1-25-07

# __JUDGMENT ENTRY__

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

| |
| --- |
| John R. Willamowski, Judge |

| |
| --- |
| William R. Zimmerman, Judge |

| |
| --- |
| Mark C. Miller, Judge |

DATED:
/hls