[Cite as *State v. Bender*, 2024-Ohio-1750.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

      CASE NO. 14-23-12

    v.

ROSSTIN GUY BENDER,

      O P I N I O N

    DEFENDANT-APPELLANT.

---

**Appeal from Union County Common Pleas Court**
**Trial Court No. 2022-CR-0106**

**Judgment Affirmed**

**Date of Decision:  May 6, 2024**

---

APPEARANCES:

    *Alison Boggs* **for Appellant**

    *David W. Phillips* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Rosstin G. Bender ("Bender"), appeals the March 22, 2023 judgment entry of sentence of the Union County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from an April 29, 2022 altercation between Bender and the victim, B.H., during which Bender stabbed B.H. with a knife nine times. On April 29, 2022, B.H., along with his girlfriend, Faith Selover ("Faith") and her brother, Joel Selover ("Joel"), invited Dean Smith ("Smith"), Bender, and Star Mentzer ("Mentzer"), Bender's girlfriend, to the residence that the three shared to "see and enjoy for a campfire" the landscape lighting that they installed in their backyard. (Feb. 6, 2023 Tr., Vol. II, at 33). During the gathering, "the lights kept getting kicked over and kicked down, stepped on[, so B.H.] asked several times to please watch the lights." (*Id.* at 37). According to B.H., when he and Bender were "bickering back and forth about the lights," Bender discharged a firearm into the ground. (*Id.* at 38). Joel testified that he believed that Bender "discharged the gun into the ground * * * to diffuse the situation." (*Id.* at 83).

{¶3} Later, when B.H. returned outside "after using the bathroom[, he saw] that the lights were kicked over again." (*Id.* at 40). Because Mentzer giggled after B.H. inquired about "who kicked over the lights," B.H. asked Bender and Mentzer to "leave" "if they think it's funny * * * ." (*Id.*). Instead of leaving, Bender "asked

if [B.H.] wanted to fight him" and B.H. agreed. (*Id.*). According to B.H., Bender then traversed 15-to-20 feet to reach him. However, before Bender could get to B.H., Faith "tried to come in the middle between [them] to put her arms out and separate the distance." (*Id.* at 47). Nevertheless, Bender "swung past her" and "hit [B.H.] first." (*Id.* at 48). "[T]he last thing [B.H. could] remember is holding Mr. Bender on top of [him] and [Faith] pulling Bender off of [him] and [Joel] pulling [B.H.] back off the ground." (*Id.* at 49). B.H. did not know that he had been stabbed until he tried to stand.

{¶4} On May 6, 2022, the Union County Grand Jury indicted Bender on Counts One and Two of felonious assault in violation of R.C. 2903.11(A)(1), (D)(1)(a), second-degree felonies, and Count Three of using weapons while intoxicated in violation of R.C. 2923.15(A), (B), a first-degree misdemeanor. On May 10, 2022, Bender appeared for arraignment and pleaded not guilty to the counts alleged in the indictment.

{¶5} On October 4, 2022, Bender filed a notice of self-defense under Crim.R. 12.2 stating that he intended

> to present evidence that on April 22, 2022 [sic], the alleged victim * * * punched [Bender] in the face without justification and used his forearm to compress [Bender's] throat while on the ground to the point he could not breathe; and that [Bender] had reasonable grounds to believe, and honestly believed, he was imminent or immediate danger of death or great bodily harm, at the time he defended himself with a knife.

(Doc. No. 44). On October 7, 2022, the State filed a memorandum in opposition to Bender's notice of self-defense. That same day, the State filed a motion in limine requesting that the trial court prevent Bender "from introducing specific instance [sic] of conduct by the victim in this matter unless and until [Bender] establishes those instances of conduct are relevant and otherwise admissible to his claim of self-defense." (Doc. No. 48).

{¶6} On January 31, 2023, the State filed another motion in limine requesting that the trial court prevent Bender "from introducing specific instances of conduct to prove the victim was the initial aggressor in support of his claim of self-defense." (Doc. No. 78). On February 6, 2023, Bender filed a memorandum in opposition to the State's motion in limine. That same day, Bender requested that the trial court instruct the jury on self-defense and the inferior-degree offense of aggravated assault.

{¶7} The case proceeded to a jury trial on February 6-8, 2023. On February 8, 2023, the jury found Bender guilty of the counts alleged in the indictment.

{¶8} On March 22, 2023, the trial court sentenced Bender to a minimum term of five years in prison to a maximum term of seven and one-half years in prison on Count One and 180 days in jail on Count Three. (Doc. No. 91). The trial court ordered that Bender serve the terms concurrently. Further, the trial court merged Counts One and Two for purposes of sentencing.

{¶9} Bender filed his notice of appeal on April 20, 2023. He raises seven assignments of error for our review. For ease of our discussion, we will begin by discussing Bender's first and sixth assignments of error together; followed by his second assignment of error; then together his third, fourth, and fifth assignments of error; and finally his seventh assignment of error.

### First Assignment of Error

**The Jury Lost Its Way When Reviewing The Evidence Presented For Guilt Contrasted With The Evidence Of Self-Defense, Resulting In A Verdict That Is Against The Manifest Weight Of The Evidence.**

### Sixth Assignment of Error

**The Trial Court Erred When It Overruled Appellant's Motion For A Criminal Rule 29 Acquital [sic].**

{¶10} In his first and sixth assignments of error, Bender argues that his felonious-assault convictions are based on insufficient evidence and are against the manifest weight of the evidence. On appeal, Bender does not dispute that the State proved the elements of felonious assault. Rather, Bender contends that his felonious-assault convictions are based on insufficient evidence and are against the manifest weight of the evidence because he "presented evidence by a preponderance of the evidence that he acted in self-defense, and the State failed to prove beyond a reasonable doubt that it was not self-defense * * * ." (Appellant's Brief at 11).

*Standard of Review*

**{¶11}** Under Crim.R. 29(A), a court "shall order the entry of the judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Consequently, "[a] motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

**{¶12}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33. *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19

("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence.").

**{¶13}** On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Sufficiency of the Evidence*

**{¶14}** As an initial matter, even though Bender challenges the sufficiency and the weight of the evidence supporting the jury's finding of guilt as to the felonious-assault charge under Count Two of the indictment, we need not address that argument. *Accord State v. Sheldon*, 3d Dist. Hardin No. 6-18-07, 2019-Ohio-

4123, ¶ 11. "Specifically, '[w]hen counts in an indictment are allied offenses, and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency [or weight] of the evidence on the count that is subject to merger because any error would be harmless' beyond a reasonable doubt." *Id.*, quoting *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14.

{¶15} In this case, error, if any, with respect to the sufficiency or weight of the evidence as to the jury's finding of guilt as to Bender's felonious-assault charge under Count Two is harmless beyond a reasonable doubt because it was merged with Count One. *Accord id.* at ¶ 12; *Ramos* at ¶ 13. In other words, Bender was not *convicted* of the felonious-assault offense alleged under Count Two because the trial court merged that offense for purposes of sentencing. *Accord Sheldon* at ¶ 12. Indeed, the Supreme Court of Ohio has explicitly stated that a "conviction" requires both a finding of guilt and a sentence. *Ramos* at ¶ 16. For these reasons, we need not address any arguments challenging the sufficiency or weight of the evidence regarding the jury's finding of guilt as to Bender's felonious-assault charge under Count Two. *Accord Sheldon* at ¶ 12; *Ramos* at ¶ 13, 18.

{¶16} Therefore, we will begin by addressing Bender's sufficiency-of-the-evidence argument as it relates to his felonious-assault conviction under Count One. On appeal, Bender argues that the trial court erred by denying his Crim.R. 29 motion because the State failed to prove beyond a reasonable doubt that he did not act in

self-defense.  Decisively, Bender's challenge to the sufficiency of the evidence as to self-defense is inappropriate.  *Accord State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 10; *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, ¶ 27.

**{¶17}** Traditionally, "[s]elf-defense is an affirmative defense, and the accused bears the burden of proving it by a preponderance of the evidence." *Bagley* at ¶ 11.  "However, effective March 28, 2019, the General Assembly modified Ohio's self-defense statute, R.C. 2901.05, to place the burden on the state to prove beyond a reasonable doubt that the accused did not act in self-defense." *State v. Ballein*, 12th Dist. Fayette No. CA2021-10-022, 2022-Ohio-2331, ¶ 30.  Currently, "[e]vidence as to all elements of self-defense must be presented at trial in order for a defendant to be acquitted, but to overcome the claim, the state need only disprove one element of the defense by proof beyond a reasonable doubt." *Id.* at ¶ 31. "Moreover, any presumption as to the use of force in self-defense 'may be rebutted by a preponderance of the evidence, provided that the prosecution's burden of proof remains proof beyond a reasonable doubt as described in' R.C. 2901.05(B)(1)." *Id.*, quoting R.C. 2901.05(B)(4).

**{¶18}** Nevertheless, "there is no due-process right to a presumption of an affirmative defense such as self-defense." *Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, at ¶ 19.  Thus, notwithstanding "the shift in the burden of proof by the amendment to R.C. 2901.05, the absence of self-defense is not an essential element

of any offense that the state carried the burden of proving at trial." *Ballein* at ¶ 36. *See also State v. Messenger*, 10th Dist. Franklin No. 19AP-879, 2021-Ohio-2044, ¶ 43 (concluding that "there is nothing in the current version of R.C. 2901.05(B)(1) indicating that by shifting the burden of proof on the affirmative defense of self-defense, the General Assembly intended to transform the absence of self-defense into an essential element of a criminal offense"). Consequently, "[Bender's] claim of self-defense is not an aspect of a sufficiency of the evidence or Crim.R. 29 analysis, and the trial court did not err [by denying his] Crim.R. 29 motion [in light of his] self-defense claim." *Ballein* at ¶ 36. Therefore, we will address Bender's self-defense argument only in our analysis of the manifest weight of the evidence. *Id.*

*Manifest Weight of the Evidence*

{¶19} Bender was convicted of felonious assault in violation of R.C. 2903.11(A)(1). R.C. 2903.11 provides, in its relevant part, that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * * ." R.C. 2903.11(A)(1). Bender does not dispute that the State proved the elements of that offense. Rather, Bender argues that the jury lost its way in concluding that he did not act in self-defense.

{¶20} Under Ohio's current self-defense statute, "a defendant claiming self-defense has the burden of production—that is, the burden of producing evidence that 'tends to support' his use of force in defending himself." *State v. Estelle*, 3d

Dist. Allen, 2021-Ohio-2636, ¶ 18. Thus, "if evidence is presented 'that tends to support' that the defendant used the force in self-defense, the *prosecution* must prove beyond a reasonable doubt that the accused did not act in self-defense." (Emphasis sic.) *State v. Flory*, 3d Dist. Van Wert No. 15-20-02, 2020-Ohio-5136, ¶ 43. "Accordingly, 'the burden of *proof* for * * * self-defense has shifted to the state,' but 'the burden of *production* for * * * self-defense[ ] remains with the defendant.'" (Emphasis sic.) *State v. Green*, 3d Dist. Marion No. 9-22-13, 2023-Ohio-4360, ¶ 104, quoting *Messenger*, 2021-Ohio-2044, at ¶ 44.

{¶21} "Self-defense is an affirmative defense that, if proved, relieves a defendant of criminal liability for the force that the defendant used." *Ballein* at ¶ 43. "The elements of self-defense differ depending on whether the defendant used deadly or non-deadly force to defend himself." *Bagley*, 2014-Ohio-1787, at ¶ 15. Deadly force is "any force that carries a substantial risk that it will proximately result in the death of any person." R.C. 2901.01(A)(2). A "substantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). In most situations, "stabbing a victim (or victims) with a knife constitutes the use of deadly force." *State v. Harding*, 2d Dist. Montgomery No. 24062, 2011-Ohio-2823, ¶ 15.

> To establish self-defense through the use of deadly force, an accused must prove: "(1) the accused was not at fault in creating the situation giving rise to the affray; (2) the accused had a bona fide belief that he

> or she was in imminent danger of death or great bodily harm and that the only means of escape from such danger was in the use of force; and (3) the accused must not have violated any duty to retreat or to avoid the danger."

*Bagley* at ¶ 16, quoting *State v. Thacker*, 3d Dist. Marion No. 9-03-37, 2004-Ohio-1047, ¶ 14. Generally, "a person is privileged only to 'use as much force as is reasonably necessary to repel [an] attack.'" *State v. Crowe*, 3d Dist. Allen No. 1-19-12, 2019-Ohio-3986, ¶ 16, quoting *State v. Shine-Johnson*, 10th Dist. Franklin No. 17AP-194, 2018-Ohio-3347, ¶ 61.

**{¶22}** "[T]he State must 'disprove at least one of the elements of self-defense beyond a reasonable doubt.'" *State v. Passmore*, 3d Dist. Hancock No. 5-22-39, 2023-Ohio-3209, ¶ 29, quoting *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31. "'The elements of self-defense are cumulative, and a defendant's claim of self-defense fails if any one of the elements is not present.'" *Id.*, quoting *State v. Ridley*, 1st Dist. Hamilton No. C-210458, 2022-Ohio-2561, ¶ 15.

**{¶23}** On appeal, Bender contends that the evidence that he presented at trial that he acted in self-defense is weightier than the evidence presented by the State that he did not. In support of this argument, Bender points to the inconsistencies of B.H.'s, Joel's, and Faith's testimonies. Specifically, Bender contends that "the State's evidence regarding the logistics of the fight is contrary to [findings of the emergency room doctor who B.H.], creating doubt on the credibility of its witnesses

in their entirety." (Appellant's Brief at 5). That is, Bender contends that "the placement of [B.H.'s] wounds is consistent with [B.H.] being on top of Mr. Bender and Mr. Bender doing whatever he could to get [B.H.] off of him because he was being choked." (*Id.* at 11). Consequently, Bender argues that the weight of the evidence supports that he acted in self-defense. In other words, Bender contends that his version of the incident is more credible than B.H.'s, Joel's, and Faith's version.

{¶24} "Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact." *State v. Banks*, 8th Dist. Cuyahoga No. 96535, 2011-Ohio-5671, ¶ 13, citing *DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus. "The trier of fact is best able 'to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984).

{¶25} Notwithstanding Bender's contention that B.H.'s, Joel's, and Faith's testimonies conflict with the medical evidence, "we are mindful of the jury's 'superior first-hand perspective in judging the demeanor and credibility of witnesses.'" *State v. Suffel*, 3d Dist. Paulding No. 11-14-05, 2015-Ohio-222, ¶ 33, quoting *State v. Phillips*, 10th Dist. Franklin No. 14AP-79, 2014-Ohio-5162, ¶ 125.

Critically, it is well within the province of the trier-of-fact to determine the credibility of B.H.'s, Joel's, Faith's, and Bender's testimonies, including the prerogative to find Bender's version of events not to be truthful. *Accord State v. Chavez*, 3d Dist. Seneca No. 13-19-05, 2020-Ohio-426, ¶ 46. Indeed, the trier of fact was free to believe or disbelieve B.H.'s, Joel's, and Faith's testimonies (or Bender's testimony) or accept part of what B.H., Joel, Faith, and Bender said and reject the rest. *Accord id.*

**{¶26}** Even so, notwithstanding Bender's contention that the weight of the evidence suggests that he acted in self-defense because the medical evidence supports his version of events, the balance of the State's evidence weighs against Bender's self-defense claim. In other words, the weight of the evidence reflects that Bender was at least partially at fault in creating the situation giving rise to the affray. Indeed, the evidence reflects that Bender voluntarily entered into the fight with B.H. by inviting B.H. to fight. The record further reflects that Bender exceeded the force reasonably necessary for self-defense during the fight. *See Martin v. State*, 8th Dist. Cuyahoga No. 110919, 2022-Ohio-2580, ¶ 28 (concluding "that Martin voluntarily entered the encounter by proceeding to the police station parking lot and that he exceeded the force reasonably necessary for self-defense by using a deadly weapon").

**{¶27}** To begin with, Bender bore the initial burden of production under the first element of a self-defense claim to demonstrate that he was not at fault for

creating the violent situation. *Accord State v. Canankamp*, 3d Dist. Auglaize No. 2-22-02, 2023-Ohio-43, ¶ 39. "[T]he first element of a self-defense claim provides that the defendant must not be at fault in creating the situation that gave rise to the affray." *State v. Elam*, 12th Dist. Butler No. CA2021-08-106, 2022-Ohio-1895, ¶ 14. *See also State v. Woodson*, 6th Dist. Lucas No. L-21-1068, 2022-Ohio-2528, ¶ 82 ("'Ohio courts have long recognized that a person cannot provoke [an] assault or *voluntarily enter an encounter* and then claim a right of self-defense.'"), quoting *State v. Nichols*, 4th Dist. Scioto No. 01CA2775, 2002 WL 126973, *3 (Jan. 22, 2002) "This concept is broader than simply not being the immediate aggressor." *Elam* at ¶ 14. "A person may not provoke an assault or voluntarily enter an encounter and then claim a right of self-defense." *Id.* "Ohio courts have long recognized that a defendant is at fault in creating the situation giving rise to the affray when the defendant chooses to confront the victim or knowingly go to a place where the victim will be, even when the defendant's action was otherwise completely lawful." *Id.* at ¶ 15.

{¶28} In this case, the State presented the testimony of B.H. and Faith, who testified that Bender was the initial aggressor and that he voluntarily entered into the fight with B.H. by inviting B.H. to fight. *Accord State v. Kean*, 10th Dist. Franklin No. 17AP-427, 2019-Ohio-1171, ¶ 118 (specifying that "[b]oth of the state's witnesses contradicted appellant's version, testifying Barnett and appellant willingly met up in the middle of the street and [the appellant] began to throw

punches"). *See also Elam* at ¶ 15 ("Even if [the victim] grabbed appellant by the neck and pushed her against the house and, under appellant's version, appellant did not throw the first punch, the trial court did not err in finding that appellant was at fault in creating the situation.").

{¶29} At trial, B.H. testified that, after he asked Bender and Mentzer to leave, Bender responded by asking him if he "wanted to fight him." (Feb. 6, 2023 Tr., Vol. II, at 40). B.H. further testified that, after he agreed to fight Bender, Bender traversed 15-to-20 feet to reach him, then "swung past" Faith (who was trying to intercede) and struck B.H. first. (*Id.* at 48). Faith likewise testified that, after B.H. asked Bender and Mentzer to leave, Bender "asked [B.H.] if he wanted to fight." (*Id.* at 127). According to Faith, Bender "punched [B.H.] in the face," then B.H. "punched him back." (*Id.* at 130).

{¶30} Moreover, even though Bender denied that he threw the first punch, Bender's own testimony suggests that he was at least partially at fault for creating the situation giving rise to the affray. *Accord Woodson* at ¶ 85; *State v. McElroy*, 11th Dist. Trumbull Nos. 2002-T-0115 and 2002-T-0116, 2003-Ohio-6762, ¶ 30-31 (concluding that the defendant could not claim self-defense because "his testimony demonstrated that he was at least partially at fault for creating the situation giving rise to the affray"). That is, Bender testified that he voluntarily entered the encounter with B.H. *See State v. Wallace-Lee*, 2d Dist. Greene No. 2019-CA-19, 2020-Ohio-3681, ¶ 40.

{¶31} Nevertheless, the weight of the evidence presented at trial reflects that Bender did not have a bona fide belief that he was imminent danger of death or great bodily harm and that this only means of escape from such danger was the use of force a required by the second element of a self-defense claim. Under the second element of self-defense, "[t]he person's belief must be objectively reasonable under the circumstances and he must subjectively believe he needed to resort to force to defend himself." *State v. Bundy*, 4th Dist. Pike No. 11CA818, 2012-Ohio-3934, ¶ 54. Specifically, "'[t]he objective part of the test requires consideration of "whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack," a reasonable person would believe that danger was imminent.'" *Id.*, quoting *State v. Hendrickson*, 4th Dist. Athens No. 08CA12, 2009-Ohio-4416, ¶ 30, quoting *State v. Keith*, 10th Dist. Franklin Nos. 08AP-28 and 08AP-29, 2008-Ohio-6122, ¶ 23. "The subjective part requires consideration of whether the defendant himself actually believed that he was in imminent danger." *Id.*

{¶32} Importantly, under the second element of a self-defense claim "a defendant must show that 'that the degree of force used was "warranted" under the circumstances and "proportionate" to the perceived threat.'" *Id.* at ¶ 55, quoting *Hendrickson* at ¶ 31. "'If * * * the amount of force used is so disproportionate that it shows an "unreasonable purpose to injure," the defense of self-defense is unavailable.'" *Id.*, quoting *State v. Macklin*, 8th Dist. Cuyahoga No. 94482, 2011-

Ohio-87, ¶ 27, quoting *State v. Speakman*, 4th Dist. Pickaway No. 00CA035, 2001 WL 315198, *4 (Mar. 27, 2001).

**{¶33}** In this case, the weight of the evidence presented at trial demonstrates that Bender's use of deadly force was not "reasonably necessary and proportionate to the apparent danger." *State v. Dearmond*, 3d Dist. Logan No. 8-22-41, 2024-Ohio-393, ¶ 31. Critically, Bender "brought a knife to a fist fight and seriously injured" B.H. *State v. James*, 2d Dist. Montgomery No. 28892, 2021-Ohio-1112, ¶ 25. Specifically, the evidence reflects that Bender and B.H. "met with the intention of engaging in a fist fight." *Kean*, 2019-Ohio-1171, at ¶ 119 (resolving that "it was within the province of the jury to credit the testimony of the state's witnesses that Barnett and appellant met with the intention of engaging in a fist fight"). Indeed, there was no evidence presented that B.H. wielded a weapon during the altercation.

**{¶34}** Certainly, under the facts presented, it was within the province of the jury to credit the testimonies offered by the State's witnesses that Bender did not have "reasonable grounds for believing there was an imminent threat of death or serious bodily harm." *Id.* at ¶ 119. Consequently, the evidence presented reflects that Bender "used deadly force when he was not faced with deadly force" and that "[t]he degree of force used by [Bender] was neither warranted under the circumstances nor proportionate to the perceived threat." *State v. Green*, 12th Dist. Warren No. CA2017-11-161, 2018-Ohio-3991, ¶ 36.

{¶35} Therefore, based on our review of the record, we conclude that the trier of fact did not lose its way by concluding that Bender did not act in self-defense. "The jury heard all of the testimony, considered the evidence, and found the state's witnesses credible, and we will not disturb the jury's verdict on appeal." *Id.* at ¶ 37. Importantly, "[t]he jury did not lose its way simply because it believed the prosecution testimony and disbelieved appellant's account." *Id.* Accordingly, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we conclude the jury did not clearly lose its way and create such a manifest miscarriage of justice that Bender's felonious-assault conviction must be reversed and a new trial ordered. Thus, Bender's felonious-assault conviction under Count One is not against the manifest weight of the evidence.

{¶36} Bender's first and sixth assignments of error are overruled.

### Second Assignment of Error

**The Trial Court Erred When It Failed To Grant A Mistrial First After The Jury Was Tainted By Inaccurate Statements Made By The Prosecutor Regarding Appellant's Attempt To Invoke The Fifth Amendment When He Was On The Stand And Second When The Prosecutor Improperly Commented On Appellant's Pre-Arrest Silence.**

{¶37} In his second assignment of error, Bender argues that the trial court erred by failing to declare a mistrial based on prosecutorial misconduct. Specifically, Bender argues that the prosecutor improperly "commented on * * * Mr. Bender invoking his Fifth Amendment right not to incriminate himself, then

minutes later commenting on Mr. Bender's pre-arrest silence." (Appellant's Brief at 12).

*Standard of Review*

{¶38} "'A mistrial should not be ordered in a cause simply because some error has intervened. The error must prejudicially affect the merits of the case and the substantial rights of one or both of the parties.'" *State v. Sipple*, 10th Dist. Franklin No. 17AP-862, 2018-Ohio-4342, ¶ 18, quoting *Tingue v. State*, 90 Ohio St. 368 (1914), paragraph three of the syllabus. "Notably, mistrials are appropriate only when the ends of justice so require and a fair trial is no longer possible." *State v. Carter*, 3d Dist. Allen No. 1-15-62, 2017-Ohio-1233, ¶ 61.

{¶39} "Because it rests within the sound discretion of the court, we review a trial court's grant or denial of a motion for a mistrial for an abuse of discretion." *State v. Houdeshell*, 3d Dist. Hancock No. 5-18-02, 2018-Ohio-5217, ¶ 44. An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

*Analysis*

{¶40} In this case, Bender moved for a mistrial based on alleged improper statements made by the prosecutor at trial. "When a defendant moves for a mistrial based on prosecutorial misconduct, the trial court must determine whether 'the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced.'" *State v. Dukes*, 9th Dist. Summit No. 30366,

2023-Ohio-2863, ¶ 24, quoting *State v. Dukles*, 9th Dist. Medina No. 12CA0100-M, 2013-Ohio-5263, ¶ 33. Thus, "'[w]hen the grounds for a mistrial are based on prosecutorial misconduct, the defendant must show that the alleged misconduct deprived him of a fair trial.'" *State v. Grover*, 11th Dist. Ashtabula No. 2022-A-0092, 2024-Ohio-505, ¶ 40, quoting *State v. Sbarra*, 11th Dist. Portage No. 95-P-0153, 1998 WL 156865, *3 (Mar. 20, 1998). "'The defendant must show that, but for the prosecutor's misconduct, the trier of fact would not have convicted him.'" *Dukes* at ¶ 24, quoting *Dukles* at ¶ 33. "'In making this determination, an appellate court should consider several factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant.'" *State v. Miller*, 3d Dist. Marion No. 9-18-02, 2018-Ohio-3433, ¶ 46, quoting *State v. Braxton*, 102 Ohio App.3d 28, 41 (8th Dist.1995).

{¶41} Bender takes issue with the prosecutor's statements regarding the invocation of his Fifth Amendment right against self-incrimination and his pre-arrest, pre-*Miranda* silence. "The Fifth Amendment to the Constitution of the United States provides that no person 'shall be compelled in any criminal case to be a witness against himself.'" *State v. Perez*, 3d Dist. Defiance No. 4-03-49, 2004-Ohio-4007, ¶ 8, quoting the Fifth Amendment to the U.S. Constitution. "This Amendment is made applicable to the states through the due process clause of the Fourteenth Amendment." *Id.*

**{¶42}** "'The right to remain silent is conferred by the United States and the Ohio Constitutions.'" *Chavez*, 2020-Ohio-426, at ¶ 50, quoting *State v. Graber*, 5th Dist. Stark No. 2002CA00014, 2003-Ohio-137, ¶ 78. "'The privilege against self-incrimination "is fulfilled only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.'"'" *Id.*, quoting *Graber* at ¶ 78, quoting *Miranda v. Arizona*, 384 U.S. 436, 460, 86 S.Ct. 1602 (1966), quoting *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, (1964). "This rule enforces one of the underlying policies of the Fifth Amendment, which is to avoid having the jury assume that a defendant's silence equates with guilt." *Perez* at ¶ 10.

**{¶43}** Here, Bender contends that the prosecutor improperly asserted that Bender "was not entitled to assert [his Fifth Amendment] privilege, in front of the jury, stating '[Bender] waived [his] Fifth Amendment right' * * * ." (Appellant's Brief at 12-13, quoting Feb. 7, 2023 Tr., Vol. II, at 194). The State disputes Bender's argument and asserts that the prosecutor's statements were not improper because Bender's refusal to answer was not justified.

**{¶44}** "'There is no absolute right to invoke the Fifth Amendment.'" *State v. Arnold*, 3d Dist. Seneca No. 13-13-27, 2014-Ohio-1134, ¶ 22, quoting *In re High Fructose Corn Syrup Antitrust Litigation*, 293 F.Supp.2d 854, 859 (C.D.Ill.2003). "The protections against self-incrimination 'must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer.'" *State*

-22-

*v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, ¶ 43, quoting *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814 (1951). Consequently, "'when a witness asserts a privilege against self-incrimination, a court may not rely upon the witness's claim alone, but has a duty to determine whether the witness's refusal to answer is justified.'" *State v. Barton*, 3d Dist. Seneca No. 13-23-22, 2024-Ohio-1417, ¶ 47, quoting *State v. Spangler*, 5th Dist. Fairfield No. 16-CA-12, 2017-Ohio-268, ¶ 30.

**{¶45}** Based on our review of the record, we conclude that Bender's refusal to answer was not justified. Specifically, at trial, Bender testified on direct examination regarding his witness's—Dean Smith—testimony that Bender "coached" his testimony:

| | |
|---|---|
| [Bender]: | My side of the things * * * is that, when we come to consult with * * * our lawyer * * * that we all talk separately and we generally had an idea of what happened that night. I've made statements in the past that I am claiming self-defense but I've never persuaded anybody or told anybody or coached anybody on what to say here today. |
| [Trial Counsel]: | So [Smith] did that on his own? |
| [Bender]: | Correct. |
| [Trial Counsel]: | Part of an effort to help you? |
| [Bender]: | I would assume so. |
| [Trial Counsel]: | Misguided effort, would you say? |
| [Bender]: | Most definitely. |

(Feb. 7, 2023 Tr., Vol. II, at 179-180). On cross-examination, Bender invoked his Fifth Amendment privilege against self-incrimination:

| [The Prosecutor]: | If I understand your testimony correctly, your friend just came in here and lied. Is that right? |
|---|---|
| [Bender]: | It would appear so, yes. |
| [The Prosecutor]: | He had lied when he said you told him what to say. Right? |
| [Bender]: | I plead the fifth on that question. |

(*Id.* at 193-194). Following consultation with his trial counsel, Bender answered the prosecutor's question:

| [The Prosecutor]: | And so, you told him what to say? |
|---|---|
| [Bender]: | I did not. |
| [The Prosecutor]: | You did not, so he lied about that? |
| [Bender]: | Correct. |
| [The Prosecutor]: | [W]ell, why did you plead the fifth then? |
| [Bender]: | I was confused on the question and did not know how to answer. |

(*Id.* at 194-195).

{¶46} Based on our review of Bender's testimony, we conclude that Bender did not present a basis to invoke his Fifth Amendment privilege against self-incrimination. *See Arnold*, 2014-Ohio-1134, at ¶ 24. "'[W]hen a defendant chooses to testify in a criminal case, the Fifth Amendment does not allow him to refuse to

answer related questions on cross-examination.'" *State v. Madison*, 160 Ohio St.3d 232, 2020-Ohio-3735, ¶ 20, quoting *Kansas v. Cheever*, 571 U.S. 87, 94, 134 S.Ct. 596 (2013). Significantly, "'[a] defendant "has no right to set forth to the jury all the facts which tend in his favor without laying himself open to a cross-examination upon those facts."'" *Id.*, quoting *Cheever* at 94, quoting *Fitzpatrick v. United States*, 178 U.S. 304, 315, 20 S.Ct. 944 (1900). Therefore, because Bender's refusal was not justified, the prosecutor's cross-examination of Bender was not improper.

**{¶47}** Bender further argues that the prosecutor improperly cross-examined him regarding his pre-arrest, pre-*Miranda* silence. Specifically, Bender contends that the prosecutor improperly "commented on [his] pre-arrest silence to attack the self-defense [claim] by inferring that if he had nothing to hide, why didn't he go to the police, or check in on his friend on a regular basis." (Appellant's Brief at 13). Here, Bender suggests that he was deprived of a fair trial because the prosecutor's cross-examination of him regarding his pre-arrest, pre-*Miranda* silence constituted substantive evidence of his guilt. The State refutes Bender's argument and contends that the prosecutor's cross-examination of Bender had "probative value for impeachment, since Bender's claim of self-defense and claiming to be the victim of an attack would usually result in a report of his lawful use of force to the police when it happened." (Appellee's Brief at 19).

**{¶48}** Generally, the "[u]se of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-

incrimination." *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, syllabus. However, "[a] defendant's pre-arrest, pre-*Miranda* silence may be introduced for impeachment purposes." *Chavez*, 2020-Ohio-426, at ¶ 55. Specifically, when "the defendant has 'cast aside his cloak of silence,'" the "use of pre-arrest silence as impeachment evidence is permitted because it furthers the truth-seeking process." *Leach* at ¶ 33, quoting *Jenkins v. Anderson*, 447 U.S. 231, 238, 100 S.Ct. 2124 (1980). "Otherwise, a criminal defendant would be provided an opportunity to perjure himself at trial, and the state would be powerless to correct the record." *Id.* Likewise, "the use of a defendant's pre-arrest, pre-*Miranda* silence as substantive evidence of guilt does not violate the Fifth Amendment privilege against self-incrimination if the defendant fails to expressly invoke the privilege." *State v. Speis*, 12th Dist. Clermont No. CA2022-07-032, 2023-Ohio-1422, ¶ 17, citing *Salinas v. Texas*, 570 U.S. 178, 133 S.Ct. 2174 (2013).

{¶49} Importantly, "the Constitution does not prohibit references to a defendant's invocation of the right to remain silent as a 'fair response' to a defendant's claims." *State v. Corey*, 11th Dist. Geauga No. 2021-G-0029, 2022-Ohio-4568, ¶ 30, quoting *United States v. Robinson*, 485 U.S. 25, 32-34, 108 S.Ct. 864 (1988). *See also State v. Roby*, 3d Dist. Putnam No. 12-09-09, 2010-Ohio-1498, ¶ 16 ("'The United States Supreme Court has held that the Fifth Amendment does not prohibit references to a defendant's invocation of the right against self-incrimination when the references are made in "fair response" to the defense's

claims.'"), quoting *State v. Ferguson*, 10th Dist. Franklin No. 07AP-999, 2008-Ohio-6677, ¶ 51, quoting *Robinson* at 32-34. "A fair response is warranted in such circumstances because '"the protective shield of the Fifth amendment"' should not become '"a sword that cuts back on the area of legitimate comment by the prosecutor on the weaknesses in the defense case."'" *Corey* at ¶ 30, quoting *Robinson* at 32, quoting *United States v. Hasting*, 461 U.S. 499, 515, 103 S.Ct. 1974 (1983) (Stevens, J., concurring).

{¶50} The prosecutor's cross-examination of Bender regarding his pre-arrest, pre-*Miranda* silence was not improper. Critically, the State's cross-examination of Bender amounts to impeachment evidence, which did not violate Bender's right to remain silent. *Accord Chavez* at ¶ 55, citing *Leach* at ¶ 21 (noting that "neither the Fifth Amendment right to be free from self-incrimination nor the Fourteenth Amendment right to due process is [sic] violated by the use of pre-arrest silence to impeach a criminal defendant's credibility"). That is, the prosecutor's cross-examination of Bender regarding his pre-arrest, pre-*Miranda* silence was a fair response to Bender's self-defense claim. *See Corey* at ¶ 38; *Ferguson* at ¶ 54. *See also Roby* at ¶ 16.

{¶51} Therefore, since the prosecutor did not improperly address Bender's invocation of his Fifth Amendment privilege against self-incrimination or his pre-arrest, pre-*Miranda* silence, Bender's substantial rights were not prejudiced and he

was not deprived of a fair trial.  For these reasons, we conclude that the trial court did not abuse its discretion by denying Bender's motion for a mistrial.

{¶52} Bender's second assignment of error is overruled.

### Third Assignment of Error

**The Trial Court Erred When It Failed To Give A Jury Instruction On Aggravated Assault.**

### Fourth Assignment of Error

**The Trial Court Erred When It Gave An Improper Instruction On Self-Defense.**

### Fifth Assignment of Error

**The Trial Court Erred When It Failed To Send Verdict Forms To The Jury As To The Issue Of Self-Defense.**

{¶53} In his third, fourth, and fifth assignments of error, Bender challenges the trial court's jury instructions and verdict forms.  In particular, in his third assignment of error, Bender argues that the trial court erred by failing to instruct the jury on the inferior-degree offense of aggravated assault.  Bender specifically argues in his fourth assignment of error that the trial court erroneously instructed the jury regarding self-defense.  Finally, in his fifth assignment of error, Bender argues that the trial court erred by providing the jury with improper verdict forms.

*Standard of Review*

{¶54} "A trial court's decision to give a jury instruction is within its discretion, and we will not reverse such a decision absent an abuse of that

discretion." *State v. Wilson*, 3d Dist. Allen No. 1-09-64, 2010-Ohio-2294, ¶ 8. Again, an abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Adams*, 62 Ohio St.2d at 157.

*Analysis*

{¶55} "While a trial court has broad discretion to determine how it will instruct a jury, the court has a duty to 'fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.'" *State v. Torres*, 3d Dist. Defiance No. 4-01-06, 2002 WL 418392, *3 (Mar. 18, 2002), quoting *State v. Comen*, 50 Ohio St.3d 206, 210 (1990). "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 240.

*Aggravated Assault Instruction*

{¶56} In his third assignment of error, Bender contends that the trial court erred by failing to instruct the jury on the inferior-degree offense of aggravated assault. "[A] trial court may refuse to issue a requested jury instruction if '"the evidence adduced at trial is legally insufficient" to support it.'" *Estelle*, 2021-Ohio-2636, at ¶ 13, quoting *State v. Juntunen*, 10th Dist. Franklin Nos. 09AP-1108 and 09AP-1109, 2010-Ohio-5625, ¶ 13, quoting *State v. Barnd*, 85 Ohio App.3d 254, 259 (3d Dist.1993). *See also Torres* at *3 ("When a trial court is faced with the

decision whether to give a requested instruction, the appropriate inquiry is whether sufficient evidence has been presented to support the instruction."). "[T]he trial judge is in the best position to gauge the evidence before the jury and is provided the discretion to determine whether the evidence adduced at trial was sufficient to require an instruction." *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, ¶ 72.

**{¶57}** "Aggravated assault is an offense of an inferior degree of felonious assault." *State v. Lane*, 6th Dist. Erie No. E-22-035, 2023-Ohio-1305, ¶ 13. "An instruction on aggravated assault is appropriate when the evidence supports a conviction for felonious assault, but the assault resulted from serious provocation by the victim." *State v. Morrow*, 2d Dist. Clark No. 2002-CA-37, 2002-Ohio-6527, ¶ 8. That is, "[i]n a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, such that a jury could both reasonably acquit [the] defendant of felonious assault and convict [the] defendant of aggravated assault, an instruction on aggravated assault, as an inferior degree of felonious assault, *must* be given." (Emphasis sic.) *State v. Booker*, 6th Dist. Lucas No. L-10-1140, 2013-Ohio-45, ¶ 25.

**{¶58}** "'Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or arouse the defendant into using deadly force.'" *Id.* at ¶ 26, quoting *State v. Mabry*, 5 Ohio App.3d 13 (8th Dist.1982), paragraph five of the syllabus. "'In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly

force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time.'" *Id.*, quoting *Mabry* at paragraph five of the syllabus.

**{¶59}** "Ohio courts considering what constitutes sufficient 'serious provocation' have found that past incidents or verbal threats are not sufficient; words are not sufficient; and a victim's simple pushing or punching the defendant is not sufficient." *State v. Mitchell*, 6th Dist. Lucas No. L-22-1166, 2023-Ohio-3543, ¶ 53. Similarly, "[r]egarding the emotional state necessary to constitute sudden passion or a sudden fit of rage, Ohio courts have found that confusion or fear alone is not sufficient." *Id.* at ¶ 54. Indeed, "where a defendant testifies that he was merely afraid and no evidence exists that he actually acted under a sudden fit of passion or rage, a court does not abuse its discretion by refusing to provide an instruction on aggravated assault." *Lane* at ¶ 36.

**{¶60}** On appeal, Bender argues that he presented sufficient evidence that he acted under serious provocation. In response, the State expostulates that "[a]ggravated assault is generally incompatible with a theory of self-defense because self-defense requires proof of fear while aggravated assault requires a showing of a sudden passion or rage." (Appellee's Brief at 20). In the alternative, the State asserts that Bender did not present any evidence that he "acted 'in a sudden fit of rage.'" (*Id.* at 21). Instead, the State proclaims that Bender "unequivocally testified that he stabbed [B.H.] out of a fear for his safety." (*Id.*).

-31-

**{¶61}** "This Court has stated that a defendant who asserts self-defense "'is not entitled under Ohio law to instructions on self-defense and on lesser included offenses [or inferior degree offenses], but must choose between the two."'" *State v. Densmore*, 3d Dist. Henry No. 7-08-04, 2009-Ohio-6870, ¶ 18, quoting *State v. Rick*, 3d Dist. No. 9-08-27, 2009-Ohio-785, ¶ 64, quoting *State v. Shadd*, 3d Dist. Marion No. 9-94-5, 1994 WL 265861, *2 (June 15, 1994). Our sister courts of appeal have agreed that "[i]n most cases, an aggravated assault instruction is incompatible with an instruction on self-defense, so that both cannot be given together." *State v. Shepherd*, 12th Dist. No. CA2015-11-187, 2017-Ohio-328, ¶ 26. *See also State v. Wimpey*, 6th Dist. Lucas No. L-18-1262, 2019-Ohio-4823, ¶ 18 ("Generally, an instruction on aggravated assault is incompatible with an instruction on self-defense, such that both cannot be given together, because the legal theories underpinning each offense are incompatible (aggravated assault—rage; self-defense—fear).").

**{¶62}** However, some courts have diverged and resolved that "'[w]here there is sufficient evidence on the issues of self-defense and aggravated assault, the court must charge the jury on both, when so requested.'" *Shepherd* at ¶ 26, quoting *State v. Owens*, 5th Dist. Richland No. 2004-CA-87, 2005-Ohio-4402, ¶ 31. *See also Wimpey* at ¶ 18; *State v. Smith*, 168 Ohio App.3d 141, 2006-Ohio-3720, ¶ 59 (1st Dist.). "For instance, an aggravated assault instruction could be given in a self-

defense case where a defendant exceeded the amount of force necessary for his defense, out of passion or rage." *Shepherd* at ¶ 26.

{¶63} Nevertheless, we need not resolve such disaccord in this case because Bender did not present sufficient evidence that he acted under "sudden passion or a fit of rage" as contemplated by the aggravated-assault statute. Decisively, the theory of Bender's case was that he stabbed B.H. nine times out of fear. Indeed, Bender testified that he found himself on the ground with B.H. "on top of [him] attacking [him] at which point [B.H.] took the mid section of his forearm and placed it on [Bender's] throat and [he] could no longer breathe." (Feb. 7, 2023 Tr., Vol. II, at 166). Bender testified that "[a]t that point in time, [he] didn't know if he was going to stop. [He] could not get him off of [him]. [He] could not get his body weight off of [him], so [he] reacted accordingly until [he] felt the pressure come off [his] neck." (*Id.* at 172). That is, he testified that he "pulled out [his] knife and [he] stabbed him in the back, in the lower buttocks and the thigh until he stopped and [Bender] deemed him no longer a threat." (*Id.*).

{¶64} Critically, Bender testified that "[i]t was at that time that [he] could no longer breathe that [he] *feared* that [his] life was in danger and [he] reacted accordingly." (Emphasis added.) (*Id.* at 166-167). Specifically, Bender testified that he stabbed him "[t]o get him to stop" because he "felt that [his] life was in danger" and he "wanted to neutralize the threat." (*Id.* at 173). In sum, Bender testified that "[t]he moment that [he] felt the pressure come off [his] neck and [he]

could once again breathe is the * * * moment that [he] stopped stabbing him * * * ." (*Id.* at 167).

**{¶65}** Based on the foregoing, we conclude that Bender presented evidence that he acted out of fear and not out of sudden passion or a fit of rage. *See State v. Mitchell*, 6th Dist. Lucas No. L-22-1166, 2023-Ohio-3543, ¶ 57. That is, Bender did not present reasonably sufficient evidence that the circumstances incited him to use deadly force to repel the attack. As a result, Bender did not present sufficient evidence of serious provocation. *Compare Densmore*, 2009-Oho-6870, at ¶ 16-17. Consequently, the trial court did not abuse its discretion by failing to instruct the jury on the inferior-degree offense of aggravated assault.

*Self-Defense Instruction*

**{¶66}** In his fourth assignment of error, Bender argues that the trial court erred by instructing the jury that he had a duty to retreat in contravention of Ohio's "stand your ground" law under R.C. 2901.09. "The amended 'stand your ground' law in Ohio now provides that 'a person has no duty to retreat before using self-defense * * * if that person is in a place in which the person lawfully has a right to be.'" *State v. Warnock*, 12th Dist. Madison No. CA2023-02-001, 2024-Ohio-382, ¶ 46, quoting R.C. 2901.09(B), and citing *State v. Mitchell*, 1st Dist. Hamilton No. C-220471, 2023-Ohio-2604, ¶ 17. The statute further provides that "[a] trier of fact shall not consider the possibility of retreat as a factor in determining whether or not a person who used force in self-defense * * * believed that the force was necessary

to prevent injury, loss, or risk to life or safety." R.C. 2901.09(C). "'Simply put, the new "stand your ground' law removes, in most cases, the duty to retreat before using self-defense.'" *Warnock* at ¶ 46, quoting *State v. Degahson*, 2d Dist. Clark No. 2021-CA-35, 2022-Ohio-2972, ¶ 15. *But see State v. Warth*, 1st Dist. Hamilton No. C-220477, 2023-Ohio-3641, ¶ 31 (cautioning that "R.C. 2901.09(C) is not an absolute prohibition on introducing evidence involving the possibility of retreat. Rather, the statute only prohibits fact finders from considering evidence involving the possibility of retreat to determine whether the defendant's belief that force was necessary was reasonable. Fact finders may, however, consider retreat evidence to determine who was at fault in creating the situation leading to the affray").

**{¶67}** In this case, the trial court instructed the jury, in relevant part, that

> [i]n determining whether the Defendant, in using force in self-defense reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety, you may not consider the possibility of retreat by the Defendant. The Defendant had no duty to retreat before using force in self-defense if the Defendant was in a place in which he lawfully had a right to be.

(Feb. 8, 2023 Tr. at 70).

**{¶68}** "Whether the jury instructions correctly state the law is a question that is reviewed de novo." *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, ¶ 135. "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27.

-35-

{¶69} Based on our review of the trial court's jury instruction, we conclude that the trial court's jury instruction is a correct statement of law. *Compare Warnock* at ¶ 48 (concluding that the trial court's self-defense jury instruction conformed with Ohio's "stand your ground" law). Indeed, the trial court's jury instruction plainly states the appropriate duty-to-retreat standard as codified in R.C. 2901.09. Consequently, the trial court's self-defense jury instruction is not unreasonable, arbitrary, or unconscionable.

*Verdict Forms*

{¶70} In his fifth assignment of error, Bender argues that the trial court erred by failing to give the jury a separate verdict form regarding his self-defense claim. Specifically, Bender asserts that the trial court should have provided the jury with verdict forms requiring the jury to assess whether the State met its burden of proving that he did not act in self-defense.

{¶71} Importantly, Bender did not object to the verdict forms at trial. Consequently, Bender has forfeited all but plain error on appeal. *Accord State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, ¶ 11. Under Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "We recognize plain error with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Harrison*, 3d Dist. Logan No. 8-14-16, 2015-Ohio-1419, ¶ 69. "'For plain error to apply, the trial court must have deviated from a

legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right.'" *Id.*, quoting *State v. Vielma*, 3d Dist. Paulding No. 11-11-03, 2012-Ohio-875, ¶ 34. "'Under the plain error standard, the appellant must demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors.'" *Id.*, quoting *Vielma* at ¶ 34.

**{¶72}** When reviewing a trial court's jury instructions under the plain-error standard, "'an appellate court must review the [jury] instructions as a whole and the entire record to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions.'" *State v. Smith*, 8th Dist. Cuyahoga No. 111593, 2023-Ohio-1296, ¶ 38, quoting *State v. Nicholson*, 8th Dist. Cuyahoga No. 110595, 2022-Ohio-2037, ¶ 137. "An improper or erroneous jury instruction does not constitute plain error unless, but for the error, the outcome of the trial would clearly have been different." *Id.* Consequently, Bender is required to "demonstrate that his convictions clearly would have been different had the trial court instructed the jury on self-defense either before or after the elements of each offense and on the requirement of unanimity." *Id.*

**{¶73}** On appeal, Bender contends that the trial court erred by "not send[ing] verdict forms back on the issue of self-defense, as the proper order is for the jury to determine if the State met its burden beyond a reasonable doubt self-defense [sic] and that must be a unanimous decision." (Appellant's Brief at 17). That is, Bender argues that

[t]he only way for [him] to know that each member of the jury thoughtfully considered the issue of self-defense and whether the State met its burden of beyond a reasonable doubt is for each member of the jury to sign a verdict form that either the State did or did not prove beyond a reasonable doubt that Mr. Bender did not act in self-defense.

(*Id.*).

**{¶74}** We disagree with Bender's proposition and join our sister appellate districts in the conclusion that "[t]here is no requirement for a separate finding in trials with claims of self-defense." *State v. Ellis*, 8th Dist. Cuyahoga No. 109408, 2021-Ohio-1297, ¶ 23. *Accord State v. Huish*, 10th Dist. Franklin No. 21AP-255, 2023-Ohio-365, ¶ 93; *State v. Jones*, 8th Dist. Cuyahoga No. 108371, 2020-Ohio-3367, ¶ 94. *See also State v. Garvin*, 3d Dist. Hardin No. 6-94-6, 1994 WL 514049, *5 (Sept. 21, 1994). Therefore, the absence of a separate verdict form regarding Bender's self-defense claim was not error, let alone plain error. *Accord Smith* at ¶ 48.

**{¶75}** For these reasons, Bender's third, fourth, and fifth assignments of error are overruled.

**Seventh Assignment of Error**

**The Trial Court Erred When It Sentenced Appellant To An Indefinite Sentence: Reagan Tokes.**

**{¶76}** In his seventh assignment of error, Bender argues that his sentence, imposed under Ohio's current sentencing scheme (commonly known as the "Reagan Tokes Law"), is unconstitutional.

*Standard of Review*

**{¶77}** Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

**{¶78}** In this case, Bender challenges the constitutionality of the Reagan Tokes Law—namely, Bender alleges that the Reagan Tokes Law violates his constitutional right to a trial by jury in addition to violating the separation-of-powers doctrine and due-process clause of the Ohio and United States Constitutions. Imperatively, not only has this court rejected similar facial- and as-applied-constitutional challenges to the Reagan Tokes Law, but the Supreme Court of Ohio recently endorsed the constitutionality of the Reagan Tokes Law. *Accord State v. Rentschler*, 3d Dist. Marion No. 9-22-50, 2023-Ohio-3009, ¶ 98; *State v. Hacker*, 173 Ohio St.3d 219, 2023-Ohio-2535, ¶ 41. We decline to diverge from such formidable precedent. Accordingly, Bender's sentence is not contrary to law.

**{¶79}** Bender's seventh assignment of error is overruled.

{¶80} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and MILLER, J., concur.**

**/hls**